J-S36016-17

**NON-PRECEDENTIAL DECISION - SEE SUPERIOR COURT I.O.P. 65.37**

| | | |
|---|---|---|
| IN THE INTEREST OF: D.A.B., JR., A MINOR | : | IN THE SUPERIOR COURT OF PENNSYLVANIA |
| | : | |
| | : | |
| | : | |
| APPEAL OF: A.D.B., FATHER | : | |
| | : | |
| | : | |
| | : | |
| | : | |
| | : | No. 99 EDA 2017 |

Appeal from the Order Entered December 21, 2016
In the Court of Common Pleas of Philadelphia County
Domestic Relations at No(s): CP-51-AP-0001007-2016,
CP-51-DP-0000997-2013

BEFORE: PANELLA, J., OLSON, J., and FORD ELLIOTT, P.J.E.

MEMORANDUM BY OLSON, J.: **Filed July 3, 2017**

A.D.B. ("Father") appeals from the decree entered on December 21, 2016, granting the petition filed by the Philadelphia Department of Human Services ("DHS" or the "Agency"), to involuntarily terminate his parental rights to his male child, A.D.B., Jr., born in April of 2013, ("Child"), with N.T. ("Mother"),[1] pursuant to the Adoption Act, 23 Pa.C.S. § 2511, and the order entered December 21, 2016, granting DHS's petition to change the

---

[1] On December 21, 2016, the trial court entered the decree that granted the petition to voluntarily terminate Mother's parental rights to Child and confirm her consent to his adoption. N.T., 12/21/16, at 80. Mother has not filed an appeal from the termination of her parental rights, nor is she a party to the instant appeal.

permanency goal for Child to adoption pursuant to the Juvenile Act, 42 Pa.C.S. § 6351.[2] We affirm.

On October 26, 2016, DHS filed the petitions for the involuntary termination of Father's parental rights and goal change to adoption. The trial court fully set forth the factual and procedural background of this appeal, which we adopt herein. *See* Trial Court Opinion, 1/17/17, at 1-4. At the evidentiary hearing on December 21, 2016, DHS presented the testimony of psychologist Erica Williams, Psy.D., as an agreed expert on conducting parenting capacity evaluations, and Ta'Neesha Coker, the Community Umbrella Agency ("CUA") caseworker from Wordsworth. The Child Advocate, Attorney Aaron Mixon, also questioned Dr. Williams and Ms. Coker, as did Father's counsel. Father then testified on his own behalf. On December 21, 2016, the trial court granted the petitions for involuntary termination of the parental rights of Father to Child pursuant section 2511(a)(1), (2), (5), (8), and (b) of the Adoption Act, and to change the goal to adoption pursuant to section 6351 of the Juvenile Act.

---

[2] While dated May 5, 2016, the termination decree was not docketed and entered for purposes of Pa.R.C.P. 236(b) until May 31, 2016, as the trial court did not provide Father notice pursuant to Pa.R.C.P. 236 until that date. *See Frazier v. City of Philadelphia*, 735 A.2d 113, 115 (Pa. 1999) (holding that "an order is not appealable until it is entered on the docket with the required notation that appropriate notice has been given").

On December 28, 2016, Father timely filed a notice of appeal from the termination decree and goal change order, along with a concise statement of errors complained of on appeal pursuant to Pa.R.A.P. 1925(a)(2)(i) and (b). In his brief on appeal, Father raises two issues, as follows:

[Whether] [t]he trial court erred and/or abused its discretion by entering an order on December 21, 2016, involuntarily terminating the parental rights of Father, A.D.B. More specifically, the trial court abused its discretion as substantial, sufficient and credible evidence was presented at the time of trial, which would have substantiated denying the petition for goal change termination. [Whether DHS] has failed to meet its burden for termination by clear and convincing evidence under 23 Pa.C.S.A. sections 2511(a)(1), (2), (5) and (8)[?]

[Whether] [t]he trial court erred and/or abused its discretion by terminating the parental rights of Father, A.D.B.[,] pursuant to 23 Pa.C.S.A. [§] 2511(b) where DHS failed to prove by clear and convincing evidence that involuntarily terminating his parental rights best served the emotional and needs and welfare of [C]hild[?]

Father's Brief at 9.[3]

In reviewing an appeal from an order terminating parental rights, we adhere to the following standard:

[A]ppellate courts must apply an abuse of discretion standard when considering a trial court's determination of a petition for termination of parental rights. As in dependency cases, our

---

[3] We will deem any challenge to the change in the permanency goal for Child waived by Father's failure to preserve the challenge in his concise statement and statement of questions involved portion of his brief. *See Krebs v. United Refining Company of Pennsylvania*, 893 A.2d 776, 797 (Pa. Super. 2006) (holding that an appellant waives issues that are not raised in both his concise statement of errors complained of on appeal and the statement of questions involved in his brief on appeal).

standard of review requires an appellate court to accept the findings of fact and credibility determinations of the trial court if they are supported by the record. *In re: R.J.T.*, 9 A.3d 1179, 1190 (Pa. 2010). If the factual findings are supported, appellate courts review to determine if the trial court made an error of law or abused its discretion. *Id.*; *R.I.S.*, 36 A.3d 567, 572 (Pa. 2011) (plurality opinion)]. As has been often stated, an abuse of discretion does not result merely because the reviewing court might have reached a different conclusion. *Id.*; *see also Samuel Bassett v. Kia Motors America, Inc.*, 34 A.3d 1, 51 (Pa. 2011); *Christianson v. Ely*, 838 A.2d 630, 634 (Pa. 2003). Instead, a decision may be reversed for an abuse of discretion only upon demonstration of manifest unreasonableness, partiality, prejudice, bias, or ill-will. *Id.*

As we discussed in *R.J.T.*, there are clear reasons for applying an abuse of discretion standard of review in these cases. We observed that, unlike trial courts, appellate courts are not equipped to make the fact-specific determinations on a cold record, where the trial judges are observing the parties during the relevant hearing and often presiding over numerous other hearings regarding the child and parents. *R.J.T.*, 9 A.3d at 1190. Therefore, even where the facts could support an opposite result, as is often the case in dependency and termination cases, an appellate court must resist the urge to second guess the trial court and impose its own credibility determinations and judgment; instead we must defer to the trial judges so long as the factual findings are supported by the record and the court's legal conclusions are not the result of an error of law or an abuse of discretion. *In re Adoption of Atencio*, 650 A.2d 1064, 1066 (Pa. 1994).

*In re Adoption of S.P.*, 47 A.3d 817, 826-827 (Pa. 2012).

The burden is upon the petitioner to prove by clear and convincing evidence that the asserted grounds for seeking the termination of parental rights are valid. *In re R.N.J.*, 985 A.2d 273, 276 (Pa. Super. 2009).

Moreover, we have explained:

[t]he standard of clear and convincing evidence is defined as testimony that is so "clear, direct, weighty and convincing as to

- 4 -

enable the trier of fact to come to a clear conviction, without hesitance, of the truth of the precise facts in issue."

*Id.* quoting *In re J.L.C.*, 837 A.2d 1247, 1251 (Pa. Super. 2003).

This Court may affirm the trial court's decision regarding the termination of parental rights with regard to any one subsection of section 2511(a). *See In re B.L.W.*, 843 A.2d 380, 384 (Pa. Super. 2004) (*en banc*). We will focus on section 2511(a)(1), (2) and (b), which provides as follows:

**§ 2511. Grounds for involuntary termination**

(a) General rule.--The rights of a parent in regard to a child may be terminated after a petition filed on any of the following grounds:

(1) The parent by conduct continuing for a period of at least six months immediately preceding the filing of the petition either has evidenced a settled purpose of relinquishing parental claim to a child or has refused or failed to perform parental duties.

(2) The repeated and continued incapacity, abuse, neglect or refusal of the parent has caused the child to be without essential parental care, control or subsistence necessary for his physical or mental well-being and the conditions and causes of the incapacity, abuse, neglect or refusal cannot or will not be remedied by the parent.

\* \* \*

(b) Other considerations.--The court in terminating the rights of a parent shall give primary consideration to the developmental, physical and emotional needs and welfare of the child. The rights of a parent shall not be terminated solely on the basis of environmental factors such as inadequate housing, furnishings, income, clothing and medical care if found to be beyond the control of the parent. With respect to any petition filed pursuant to subsection (a)(1), (6) or (8), the court shall not consider any efforts by the parent to remedy the conditions described therein

which are first initiated subsequent to the giving of notice of the filing of the petition.

23 Pa.C.S.A. § 2511.

With respect to subsection 2511(a)(1), our Supreme Court has held as follows.

> Once the evidence establishes a failure to perform parental duties or a settled purpose of relinquishing parental rights, the court must engage in three lines of inquiry: (1) the parent's explanation for his or her conduct; (2) the post-abandonment contact between parent and child; and (3) consideration of the effect of termination of parental rights on the child pursuant to Section 2511(b).

*In re Adoption of Charles E.D.M.*, 708 A.2d 88, 92 (Pa. 1988).

Further, this Court has stated:

> the trial court must consider the whole history of a given case and not mechanically apply the six-month statutory provision. The court must examine the individual circumstances of each case and consider all explanations offered by the parent facing termination of his or her parental rights, to determine if the evidence, in light of the totality of the circumstances, clearly warrants the involuntary termination.

*In re B.,N.M.*, 856 A.2d 847, 854-855 (Pa. Super. 2004) (citations omitted).

Father challenges the sufficiency of the evidence to support termination, alleging that he never demonstrated a settled purpose of relinquishing his rights to Child, and any failure to perform his parental duties was due to court-imposed restrictions. *See* Father's Brief at 23-24.

The trial court stated as follows:

Petitions were filed against Father on October 26, 2106. During the six-month period prior to the filing of the petitions, Fathers' SCP [Single Case Plan] objectives were to complete drug and alcohol treatment, anger management, domestic violence [courses], engage in individual therapy, obtain employment and appropriate housing and visit with Child. (N.T. 12/21/16, pgs. 26-27). Father successfully completed drug and alcohol treatment, but during the six-month period, he told CUA that he would begin using drugs again, since he was not being tested. (N.T. 12/21/16, pg. 13). Father completed anger management classes in prison, before Child was born. (N.T. 12/21/16, pgs. 46-48). After Child came into care, he was referred to Menergy for anger management and domestic violence counselling, but missed a number of appointments and was unsuccessfully discharged. (N.T. 12/21/16, pgs. 16, 28, 55-57). Father denied that he was ever involved in domestic violence. (N.T. 12/21/16, pg. 12). Father is not applying the skills he learned in his classes: his anger is still uncontrolled, and he has threatened or harassed staff at visitation locations and the office of Dr. Williams. (N.T., 12/21/16, pgs. 9, 11, 28, 42-44, 60). Father is diagnosed with schizophrenia and PTSD [Post Traumatic Stress Disorder]. (N.T. 12/21/16, pg. 11). During the six-month period, Father was not involved in individual therapy and was not taking medications for his diagnoses. (N.T. 12/21/16, pgs. 9, 14-15, 32, 53, 64-65). Father completed parenting classes, but is not applying the skills he learned in the classes. (N.T. 12/21/16, pg. 30). Father's employment is inconsistent, and [he] does not earn much money. (N.T. 12/21/16, pgs. 51-52). Father's current housing is, by his own testimony, full of dangerous black mold, and is not appropriate. (N.T. 12/21/16, pgs. 9-10, 31, 50-51). Father can no longer visit with Child because he has been banned from all [A]gency locations where supervised visits can be arranged due to safety concerns. He was banned from a number of locations because he threatened staff members, and visits were changed to take place at Family Court. Father then stole a cell phone from another parent during a visit and was banned from Family Court as well. (N.T. 12/21/16, pgs. 29, 39-40, 42-44, 58, 60-63). Until Father engages in appropriate treatment for his mental health issues and brings his aggression under control, he will not present with the capacity to parent. (N.T. 12/21/16, pg. 19). During the six-month period[,] Father failed or refused to complete his objectives and place himself in a position to parent. In fact, Father's compliance decreased over the six-month period as he

stopped attending mental health treatment or taking medication[,] and was thrown out of the Menergy program and numerous visitation locations. Because the trial court found, by clear and convincing evidence, that Father's conduct constituted a refusal to perform parental duties, termination under this section was proper.

Trial Court Opinion, 1/17/17, at 5-6.

We find the trial court's conclusion that Father has refused to perform parental duties with regard to Child, and its termination of his parental rights under section 2511(a)(1), supported by competent evidence in the record. *In re Adoption of S.P.*, 47 A.3d at 826-827.

Next, to satisfy the requirements of section 2511(a)(2), the moving party must produce clear and convincing evidence regarding the following elements: (1) repeated and continued incapacity, abuse, neglect or refusal; (2) such incapacity, abuse, neglect or refusal caused the child to be without essential parental care, control or subsistence necessary for his physical or mental well-being; and (3) the causes of the incapacity, abuse, neglect or refusal cannot or will not be remedied. *See In re Adoption of M.E.P.*, 825 A.2d 1266, 1272 (Pa. Super. 2003). The grounds for termination of parental rights under section 2511(a)(2), due to parental incapacity that cannot be remedied, are not limited to affirmative misconduct; to the contrary, those grounds may include acts of refusal as well as incapacity to perform parental duties. *In re A.L.D.*, 797 A.2d 326, 337 (Pa. Super. 2002).

Father asserts that the trial court erred in terminating his parental rights where the psychological expert, Erica Williams, testified that she had

never observed Father interact with Child. Father's Brief at 29. Father argues that Dr. Williams was concerned primarily with his anger issues, and that she acknowledged that Father's completion of programs in anger management, parenting, and healthy relationships were strengths upon which he could build in the future. *Id.* Father also alleges that Ms. Coker testified that Father never behaved aggressively toward Child, and that he acted appropriately during his visit with Child. *Id.* Ms. Coker testified that DHS's concern was Father's aggressive behavior toward DHS staff. *Id.* Father complains that Ms. Coker testified that she had concerns about his ability to parent Child, but she observed only one visit, in early 2016, between Child and him. *Id.* Father urges that the trial court should have afforded more weight to his testimony that, during visits, he plays with Child, sings songs, and brings toys and snacks for Child. *Id.*

The trial court found as follows:

Dr. Williams testified that Father's successful completion of programs twelve years ago proves that Father can indeed stabilize his issues and make progress, but that the longer he waits the less likely stabilization becomes. Until Father engages in appropriate treatment for his mental health issues and brings his aggression under control, he will not present with the capacity to parent. (N.T. 12/21/16, pgs. 17-19). Child needs permanency, which Father cannot provide. Father's compliance with his objectives has steadily decreased over the life of this case. He is now using drugs, not taking his medications, and is not engaged in domestic violence counselling, anger management or individual therapy. Father's decreasing compliance with his objectives has demonstrated that he is unwilling to remedy the causes of his incapacity to parent in order to provide Child with essential parental care, control or subsistence necessary for his physical and mental well-being.

- 9 -

Trial Court Opinion, 1/17/17, at 7-8.

We find the trial court's conclusion that Father has a parental incapacity that he cannot or will not remedy, and its termination of his parental rights under section 2511(a)(2), supported by competent evidence in the record. *In re Adoption of S.P.*, 47 A.3d at 826-827.

Finally, Father challenges the trial court's conclusion regarding section 2511(b). We have explained that the focus in terminating parental rights under section 2511(a) is on the parent, but it is on the child pursuant to section 2511(b). *See In re Adoption of C.L.G.*, 956 A.2d 999, 1008 (Pa. Super. 2008) (*en banc*). In reviewing the evidence in support of termination under section 2511(b), our Supreme Court recently stated as follows:

> [I]f the grounds for termination under subsection (a) are met, a court "shall give primary consideration to the developmental, physical and emotional needs and welfare of the child." 23 Pa.C.S. § 2511(b). The emotional needs and welfare of the child have been properly interpreted to include "[i]ntangibles such as love, comfort, security, and stability." *In re K.M.*, 53 A.3d 781, 791 (Pa. Super. 2012). In *In re E.M.*, [620 A.2d 481, 485 (Pa. 1993)], this Court held that the determination of the child's "needs and welfare" requires consideration of the emotional bonds between the parent and child. The "utmost attention" should be paid to discerning the effect on the child of permanently severing the parental bond. *In re K.M.*, 53 A.3d at 791.

*In re: T.S.M.*, 71 A.3d 251, 267 (Pa. 2013).

When evaluating a parental bond, "the court is not required to use expert testimony. Social workers and caseworkers can offer evaluations as well." *In re Z.P.,* 994 A.2d 1108, 1121 (Pa. Super. 2010) (internal citations

omitted). "Additionally, Section 2511(b) does not require a formal bonding evaluation." *Id.* Although it is often wise to have a bonding evaluation and make it part of the certified record, "[t]here are some instances . . . where direct observation of the interaction between the parent and the child is not necessary and may even be detrimental to the child." *In re K.Z.S.*, 946 A.2d 753, 762 (Pa. Super. 2008).

A parent's abuse and neglect are likewise a relevant part of this analysis:

> concluding a child has a beneficial bond with a parent simply because the child harbors affection for the parent is not only dangerous, it is logically unsound. If a child's feelings were the dispositive factor in the bonding analysis, the analysis would be reduced to an exercise in semantics as it is the rare child who, after being subject to neglect and abuse, is able to sift through the emotional wreckage and completely disavow a parent . . . Nor are we of the opinion that the biological connection between [the parent] and the children is sufficient in of itself, or when considered in connection with a child's feeling toward a parent, to establish a *de facto* beneficial bond exists. The psychological aspect of parenthood is more important in terms of the development of the child and [his or her] mental and emotional health than the coincidence of biological or natural parenthood.

*In re K.K.R.-S.*, 958 A.2d 529, 535 (Pa. Super. 2008) (internal citations and quotation marks omitted). Thus, the court may emphasize the safety needs of the child. *See In re K.Z.S.*, 946 A.2d 753, 763-764 (Pa. Super. 2008) (affirming the involuntary termination of the mother's parental rights, despite the existence of some bond, where placement with the mother would be contrary to the child's best interests, and any bond with the mother

would be fairly attenuated when the child was separated from her, almost constantly, for four years).

In his brief, Father argues as follows:

Father has made efforts to maintain a bond with Child by participating and maintaining visitation with Child. The uncontradicted testimony was that Child recognized [Father] as his [f]ather. Father testified with passion and emotion regarding his love and commitment to being a [f]ather for Child. During visits[,] Father plays and sings with Child and brings him toys and snacks. Father never acts in an aggressive or inappropriate manner with Child. Father does not believe that DHS has met their burden in showing by clear and convincing evidence that severing Father's parental rights would best serve the developmental, physical and emotional needs of Child.

Father's Brief at 31.

Regarding section 2511(b), the trial court found as follows:

Father is appropriate with Child during visits, but he often harasses or threatens staff while in Child's presence. This negatively impacts Child. (N.T. 12/21/16, pgs. 39-40, 42-44). For safety reasons, he has been banned from every visitation location, first for threatening staff, then for stealing from other parents during a visit. (N.T. 12/21/16, pgs. 28-29, 42, 58, 60-63). As a result of his own actions, Father has not had visits with Child in some time, and is unable to control his harassing behavior in order to maintain a relationship with Child. Father testified that he has never threatened anyone, and has never become angry at Child. (N.T. 12/21/16, pgs. 60, 69-70). This testimony is not credible. Father has never been a full-time parent to Child or taken him to necessary medical appointments. Child would not suffer any irreparable harm if Father's rights were terminated, and does not have a healthy and positive relationship with Father. Child has been placed with [C.H., his paternal cousin, ("Cousin")] for forty-two months, since Child was a month old. Cousin meets all of his everyday needs, and is the only caregiver he has ever known. Father has never parented Child or taken him to a medical appointment. Child is so strongly bonded to Cousin that he would suffer irreparable harm if removed from Cousin's care. (N.T. 12/21/16, pgs. 36-

- 12 -

39). DHS's witnesses were unwavering and credible. Consequently, the court did not abuse its discretion when it found that it was clearly and convincingly established that termination of Father's parental rights would not destroy an existing beneficial relationship.

Trial Court Opinion, 1/17/17, at 12-13.

Our Supreme Court has observed that the mere existence of a bond or attachment of a child to a parent will not necessarily result in the denial of a termination petition, and that "[e]ven the most abused of children will often harbor some positive emotion towards the abusive parent." *See In re: T.S.M.*, 71 A.3d at 267 *quoting In re K.K.R.-S.*, 958 A.2d at 535. The Supreme Court has instructed, "[t]he continued attachment to the natural parents, despite serious parental rejection through abuse and neglect, and failure to correct parenting and behavior disorders which are harming the children cannot be misconstrued as bonding." *In re: T.S.M.*, 71 A.3d at 267 *quoting In re Involuntary Termination of C.W.S.M.*, 839 A.2d 410, 418 (Pa. Super. 2003) (Tamilia, J. dissenting).

We have explained that a parent's own feelings of love and affection for a child, alone, do not prevent termination of parental rights. *In re Z.P.*, 994 A.2d at 1121. Further, this Court has stated: "[A] parent's basic constitutional right to the custody and rearing of . . . her child is converted, upon the failure to fulfill . . . her parental duties, to the child's right to have proper parenting and fulfillment of [the child's] potential in a permanent, healthy, safe environment." *In re B.,N.M.*, 856 A.2d 847, 856 (Pa. Super. 2004) (internal citations omitted). It is well-settled that "we will not toll the

well-being and permanency of [a child] indefinitely." *In re Adoption of C.L.G.*, 956 A.2d at 1007 *citing* *In re Z.S.W.*, 946 A.2d 726, 732 (Pa. Super. 2008) (noting that a child's life "simply cannot be put on hold in the hope that [a parent] will summon the ability to handle the responsibilities of parenting.").

After a careful review of the record in this matter, we find the record supports the trial court's factual findings, and the court's conclusions are not the result of an error of law or an abuse of discretion. *In re Adoption of S.P.*, 47 A.3d at 826-27. Accordingly, it was proper for the trial court to find no bond exists such that Child would suffer permanent emotional harm if Father's parental rights were terminated. This Court finds no abuse of discretion in the trial court's termination of Father's parental rights to Child pursuant to section 2511(b).

Accordingly, having concluded that the trial court did not err or abuse its discretion in terminating Father's parental rights pursuant to section 2511(a)(1), (2), and (b), and that Father waived challenges to the goal change to adoption, we affirm the termination decree and goal change order.[4]

_____

[4] Recently, in *In Re Adoption of L.B.M.*, 156 A.3d 1159 (Pa. 2017), our Supreme Court held that 23 Pa.C.S.A. § 2313(a) requires the trial court to appoint counsel for a child in a termination of parental rights case and that
*(Footnote Continued Next Page)*

Decree and order affirmed.

Judgment Entered.

_(signature)_

Joseph D. Seletyn, Esq.
Prothonotary

Date: 7/3/2017

_(Footnote Continued)_ _____

the failure to do so constitutes structural error, which can never be harmless in nature.

In part II-B of the lead opinion, Justice Wecht held that a trial court must appoint counsel to represent a child's legal interests even when the child's guardian *ad litem*, who is appointed to represent the child's best interests, is an attorney. Justice Wecht reasoned that a child's "legal interests" and "best interests" are distinct and require separate representation. Four members of the Court, however, disagreed with this interpretation of § 2313(a). They instead opined in concurring and dissenting opinions that separate representation would be required only if a child's best interests and legal interests conflicted.

In this case, Father did not raise any concerns before the trial court that implicated the need for independent legal counsel for Child, nor did he assert any claim that the child advocate (a licensed attorney) did not appropriately represent Child's legal and best interests. Child, who was approximately three years old at all times relevant to this case, lacked capacity to articulate any preference regarding his placement or his bond with Father and our review confirms that Child's legal and best interests were appropriately represented and not in conflict. We therefore see no reason to remand this matter for appointment of counsel pursuant to § 2313(a).